# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**LOUISA SEPAUGH PYRON**                                                              **PLAINTIFF**

**v.**                                                               **CIVIL ACTION NO. 3:21-cv-49-CWR-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                                   **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Louisa Sepaugh Pyron brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## PROCEDURAL HISTORY

On May 9, 2019, Plaintiff applied for disability insurance benefits, alleging that she has been disabled since June 20, 2018, due to bipolar disorder, post-traumatic stress disorder, panic attacks, extreme anxiety, and dissociative disorder. (Administrative Record [7] at 102; 174-75). After the agency denied Plaintiff's claim, an Administrative Law Judge ('ALJ") conducted a telephonic hearing, and on August 24, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. ([7] at 14-24). Plaintiff then appealed the ALJ's decision to the Appeals Council. On December 2, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([7] at 5-7). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his August 24, 2020, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 20, 2018, the alleged disability onset date. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder and post-traumatic stress disorder. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([7] at 16).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[2] to perform "a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to routine, repetitive tasks. She can interact with the public, coworkers and receive supervision. She cannot do fast-paced production work."

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

([7] at 18). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([7] at 22). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. ([7] at 23). Accordingly, the ALJ found that Plaintiff was not disabled. ([7] at 24).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial

3

rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff presents one argument for judicial review: "The ALJ erred in rejecting the medical opinions of record (treating source and agency consultative examiner); as a result, the RFC is contrary to law, primarily because it does not account for the waxing and waning nature of her bipolar disorder." ([8] at 1). Plaintiff specifically argues that the ALJ failed to properly consider the opinions of Dr. Deborah Gross and Dr. Jan Boggs.

Pursuant to Social Security Administration regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions," including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[3] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency factors, but need not explain how she considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

Plaintiff points to a February 25, 2020, treating source statement completed by Dr. Gross, a treating psychiatrist. Dr. Gross noted Plaintiff's diagnoses of bipolar disorder, post-traumatic stress disorder, and generalized anxiety disorder. Dr. Gross described Plaintiff as suffering from mood swings with severe irritability and aggression when provoked, suicidal thoughts with plans

---

[3] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

4

and intent, and blackout rages and memory loss when manic. ([7] at 389-90).[4]  According to Dr. Gross, when Plaintiff is manic or depressed, she loses much of her useful ability to function. ([7] at 391-92).  Dr. Gross indicated that the following stressors would prevent Plaintiff from performing a job at a satisfactory level: regular attendance; public contact; interaction with peers; being approached by strangers; having her performance supervised, judged, or evaluated; and interactions with supervisors. ([7] at 391).  Dr. Gross also indicated that Plaintiff would be absent from work more than four days per month. ([7] at 395).

Plaintiff also directs the Court to a September 19, 2019, consultative psychological examination of Plaintiff performed by Dr. Jan Boggs.  Dr. Boggs concluded as follows:

> Due to an accumulation of psychological problems, Ms. Pyron may have reached the point that she can no longer work.  She is able to follow directions but sustaining tasks and relating evenly to others is difficult.  She describes anger control problems.  She was cooperative today but a bit on edge, with tense body language and speech.  She misses her psychiatrist who has retired but is still taking medication and says that she cannot do without it.
>
> Ms. Pyron is able to handle money.  I would not expect improvement in her adaptation during the coming year.  Stress tolerance is low, and there could be some risk to self and others if she tries to work in a situation that she ends up not being able to handle.

([7] at 361).

Explaining that he considered the medical opinions in accordance with the requirements of 20 C.F.R. § 404.1520c, the ALJ specifically considered Dr. Gross's opinion and found it to be unpersuasive.  The ALJ explained as follows:

> It is not consistent with or supported by her own and other treatment records.  When Dr. Gross made this opinion, she had only seen the claimant on three occasions after not having seen her for three years.  The claimant had been in remission when last seen in summer of the 2017 and the treatment records from her treating psychologist nurse practitioner in the interim notes bipolar disorder in partial

---

[4] Dr. Gross noted that Plaintiff attempted to kill people with her car on at least two occasions when she was manic. ([7] at 390).

> remission. The claimant reported a wide range of activities of daily living to Dr. Boggs, including playing tennis. On the second visit with Dr. Gross on January 29, Dr. Gross discussed the possible benefits of part time work even if volunteering, to increase structure in her days. There is nothing to indicate such a drastic decline in the claimant's ability to function in less than a month. During office visits, the claimant reported medication controlled her symptoms and mental status evaluation were within normal limits. Subsequent visits show the claimant doing well.

([7] at 18; 22).

The ALJ also considered Dr. Boggs's opinion and found that it "is not persuasive to extent it is inconsistent with residual functional capacity. It is not supported by activities of daily living and the mental status evaluation in this report and the other medical records. The state agency also rejected this opinion." ([7] at 22).

The ALJ provided a thorough review of the evidence he considered in assessing Plaintiff's RFC and the opinions of Dr. Gross and Dr. Boggs. Dr. Gross examined Plaintiff on January 6, 2020, and explained that she had last treated Plaintiff during the summer 2017, when Plaintiff had achieved full remission of her bipolar symptoms. ([7] at 20; 381). Dr. Gross assessed Plaintiff as suffering from bipolar disorder with depression, post-traumatic stress disorder, and generalized anxiety disorder. ([7] at 20; 384). Dr. Gross examined Plaintiff again on January 29, 2020, and determined that Plaintiff should continue her medication regime since she was three weeks into a change of medication and "doing better." ([7] at 21; 386). Dr. Gross even discussed with Plaintiff the "possible benefits of part time work even if volunteering, to increase structure in her days." ([7] at 21; 386).

This examination occurred less than a month before Dr. Gross completed her treating source statement on February 25, 2020, and as previously mentioned, the ALJ found that "[t]here is certainly nothing to indicate such a drastic decline in the claimant's ability to function in less than a month." ([7] at 22). On the day the treating source statement was completed, Plaintiff

reported that her medications were controlling her symptoms, and on March 19, 2020, Plaintiff reported that she was "doing well except for sleep." ([7] at 21; 429; 432). Plaintiff continued reporting that her medications were controlling her symptoms in May and June of 2020. ([7] at 437; 440). The ALJ determined that Dr. Gross's treating source statement was inconsistent with her own treatment notes.

In addition to Dr. Gross's treatment, the ALJ also considered the treatment provided by Nurse Practitioner Carri Myers at Precise Clinical Neuroscience Specialists. Plaintiff began treatment with Myers on May 8, 2019, and by July 31, 2019, following adjustments to Plaintiff's medications, Plaintiff had reported to Myers that she was "doing much better," her moods were stable, her anxiety was managed with medication, and her mood swings were managed. ([7] at 19; 353). Myers determined that Plaintiff's bipolar disorder was in partial remission. ([7] at 356). Plaintiff saw Myers on October 29, 2019, and again reported that she was doing well, her mood was stable, and her anxiety and mood swings were managed. ([7] at 20; 363).

Plaintiff argues that the ALJ failed to account for her variable functioning, but the record does not support this argument. The ALJ specifically considered Plaintiff's testimony that she "is up and down" and has manic episodes every three months. ([7] at 19). As mentioned above, the ALJ also considered the adjustments made to Plaintiff's medications and the stabilizing effects these adjustments had on her mood.

The ALJ also considered the opinions of state agency psychologists. On June 22, 2019, Dr. Janise Hinson concluded that Plaintiff "can complete a normal work-week without excessive interruptions from psychological symptoms, can interact appropriately with coworkers and supervisors on a limited basis, and can adapt to a work setting." ([7] at 97). On October 15, 2019, Dr. Amy Baskin concurred with Dr. Hinson's conclusions. ([7] at 118). Dr. Baskin

7

specifically addressed Dr. Boggs's assessment, but concluded that Plaintiff's "[l]imitations, from a purely psychological standpoint, appear no more than moderate currently." ([7] at 116). The ALJ determined that the opinions of the state agency psychologists were generally persuasive, noting that Plaintiff's symptoms are controlled with medications, her mental status evaluations were within normal limits, and she performs a wide range of activities of daily living. ([7] at 21).

Concerning her activities of daily living, Plaintiff argues that the ALJ mischaracterized her activities and that the ALJ's reliance on them was "misplaced" because Plaintiff and her long-time friend described limitations in performing these activities.[5] Plaintiff also argues that reliance on these activities is unjustified considering her variable moods. In his decision, the ALJ stated: "In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." ([7] at 18).

The ALJ specifically noted the activities which Plaintiff reported to Dr. Boggs during the September 19, 2019, consultative examination. These activities included the following: "She gets up for coffee with her boyfriend and has a good appetite and does some food preparation. She cleans and makes her bed and washes clothes. She reads books and magazines and uses a computer. She talks on the phone. She drives and has a license. She goes to the grocery and does exercise, including tennis. She goes to AA meetings." ([7] at 360). Additionally, the ALJ considered Plaintiff's testimony at the hearing and her functioning report. ([7] at 17; 213-20).

---

[5] On June 8, 2019, Plaintiff's friend, Marianne Wgan, completed a function report, describing Plaintiff's behavior and activities. For example, Wgan explained that Plaintiff's hobbies included tennis, going to the gym, and swimming, but "her low tolerance for frustration w[ith] people has hindered her ability to play team sports—when she becomes frustrated, she acts out in an unsocial manner—slamming tennis racket, cussing and name calling." ([7] at 200).

8

The ALJ also considered Plaintiff's variable functioning.[6] The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." ([7] at 19).

Plaintiff also argues that the ALJ's determination rests on his own lay opinion of the medical data. Plaintiff essentially argues the ALJ is "playing doctor." The law is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ considered subjective complaints, medical records, and the medical opinions of record. The ALJ's decision offers a thorough review of the evidence of record. "What [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [Plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

As noted above, [s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames*, 707 F.2d at 164. The claimant bears the burden of demonstrating that the ALJ's determination is not supported by substantial evidence. *Audler*, 501 F.3d at 448. The undersigned recognizes that there is some evidence of record which support's Plaintiff's claim. However, the law is clear: conflicts in the evidence are to be resolved by the ALJ, not the courts. *Selders*, 914 F.2d at 617. The ALJ provided an explanation of his evaluation of the factors of supportability and consistency and, thus, the persuasiveness of the opinions of Dr. Gross and Dr.

---

[6] The ALJ considered Plaintiff's testimony that she "is up and down" and has manic episodes every three months and considered the stabilizing effects medication adjustments have had on her mood. *See supra* p. 7.

Boggs. The ALJ's evaluation of these opinions and Plaintiff's RFC is supported by substantial evidence and comports with applicable law.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 19th day of April, 2022.

                                                               s/ Michael T. Parker
                                                               United States Magistrate Judge